UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80989-Civ-Ryskamp/Vitunac

TABITHA HARRISON AND
GREGORY T. HARRISON,

      Plaintiffs,
vs.

AARON BURLAGE, YUVAL ARAMA,
SHATARA SHATARA, PAUL LENNERTZ,
USBALDO LARA, JESSIE FUNK, and
TRENT CROSSEN,

      Defendants.
_____/



## OMNIBUS ORDER

THIS CAUSE is before the Court on Order of Reference (DE 82) from United States District Judge Kenneth L. Ryskamp "for all pretrial matters, to take all necessary and proper action as required by law, and to submit a Report and Recommendation to this Court." Pending before the Court are the following:

(1)    Plaintiffs' Motion for Protective Order and Sanctions (DE 68, 69)[1], filed June 5, 2009. Defendants filed a Response (DE 75) on June 22, 2009. Plaintiffs filed a Reply (DE 81) on June 25, 2009.

(2)    Defendants' Motion for Discovery Sanctions (DE 72), filed June 15, 2009. Plaintiffs filed a Response (DE 81) on June 25, 2009. Defendants filed a Reply (DE 85) on July 13, 2009.

---

[1] On June 8, 2009, the Clerk of Court entered a Notice of Docket Correction noting the following error in Plaintiffs' Motion (DE 68): "Motion with Multiple Relief Filed as One Relief." Thus, the Clerk amended the record by docketing Plaintiffs' motion for sanctions as a separate docket entry (DE 69).

1

These matters are ripe for review. Both motions involve a dispute arising out of the partial deposition of Plaintiff Tabitha Harrison's nine-year old daughter, Madison Tanner. As such, the Court addresses them together.

## BACKGROUND

This civil action is brought by Plaintiffs, Palm Beach County residents, against Defendants, law enforcement officers of Palm Beach County Sheriff's Office ("PBSO"), under 42 U.S.C § 1983 for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs seek punitive damages and attorney's fees and costs under 42 U.S.C. §§ 1983 and 1988(b) for Defendants alleged use of excessive force against them during their arrests on October 28, 2007.

Plaintiffs initially filed their Complaint on September 9, 2008 (DE 1). Plaintiffs later filed an Amended Complaint (DE 34) on December 5, 2008 to allege two separate counts, one count for allegations involving each Plaintiff, based on the Court's Order (DE 32) partially granting Defendants' separately filed amended motions to dismiss. On July 17, 2009, Plaintiffs filed a Second Amended Complaint (DE 90) adding four additional PBSO Deputies as Defendants, dropping two previously named PBSO Detectives as Defendants, and removing certain factual allegations. Under the Court's Scheduling Order (DE 28), discovery in this case closes July 31, 2009, and all pretrial motions and memoranda of law must be filed by August 31, 2009. Trial is presently set for December 14, 2009 (DE 29).

## PARTIES' CONTENTIONS

Madison Tanner ("Madison") is the nine-year old sister of Peyton Tanner ("Peyton"). Peyton, a minor child, is the alleged victim giving rise to Plaintiffs' arrests for child abuse. Plaintiff Tabitha Harrison is the mother of both children and Plaintiff Gregory Harrison is their stepfather.

Madison, a witness in this case, appeared for a deposition on June 5, 2009 (DE 72-2). After a dispute arose between the parties regarding the proper subjects of inquiry at this deposition, the deposition was terminated prior to conclusion, and the instant Motions were subsequently filed.

<u>Plaintiffs' Motion for Protective Order and Sanctions (DE 68, 69)</u>

In their Motion, Plaintiffs ask the Court to enter a protective order prohibiting Defendants from asking Plaintiff Tabitha Harrison or her daughter Madison about (1) Peyton's medical condition and treatment, (2) Plaintiffs' methodology and extent of punishment relating to Plaintiff Tabitha Harrison's children, (3) the methodology used to secure Peyton, and (4) the reasons and circumstances leading to Plaintiffs' arrests. As grounds, Plaintiffs argue that this case solely involves excessive force claims, and not false arrest claims or any challenge to the arresting officers' probable cause findings. Plaintiffs argue that any inquiry by Defendants into the reasons and circumstances for Plaintiffs' arrests is outside the scope of a prior Court Order (DE 64), according to which the "reason for plaintiffs' arrest is not relevant." Plaintiffs contend that, despite this Order, Defendants improperly inquired into the reasons for Plaintiffs' arrests at the depositions of Plaintiff Gregory Harrison and Madison, and are likely to inquire about the reasons at an upcoming deposition of Plaintiff Tabitha Harrison. Plaintiffs also argue that Defendants asked improper questions tending to intimidate or annoy a minor deponent like Madison. Plaintiffs seek sanctions against Defendants on grounds that Defendants improperly refused to continue Madison's deposition.

<u>Defendants' Response (DE 75)</u>

Defendants incorporate by reference their separately pending Motion for Discovery Sanctions (DE 72), discussed *infra*, in response to Plaintiffs' claims regarding Madison's deposition. Defendants add that Madison's deposition was handled "delicately and professionally," and that they

3

should be permitted to complete her deposition as she is a critical witness in this case. Defendants agree that the Court has ruled that Peyton's medical condition and treatment is irrelevant, and state that they do not intend to inquire into this issue. Defendants also agree that the Court's Order states that the issue in this case is excessive force and that the reasons for Plaintiffs' arrests are irrelevant. Defendants argue, however, that at the time of its Order, the Court did not know of Plaintiffs' interrogatory answers showing Plaintiffs' intent to sue for false arrest and false imprisonment. Further, Defendants argue that Plaintiffs' allegations go far beyond the moment of Plaintiffs' arrests and purport to raise claims of false arrest. Moreover, even if Plaintiffs no longer claim false arrest, discovery into the three remaining topics at issue is still reasonably calculated to lead to admissible evidence and is thus, discoverable. For instance, Plaintiffs' perception of the reason for their arrest could have affected their responses to being arrested. Additionally, whether Plaintiffs are physical with one another, their children, and/or others, is relevant to how they acted the night of their arrests. Defendants argue that an order prohibiting inquiry into the "reasons and circumstances" of Plaintiffs' arrests would be overbroad. Defendants claim that Plaintiffs set a deposition of Robert Tanner, an individual who was not present at Plaintiffs' arrest, but who has knowledge of the events leading up to the arrest. Thus, Defendants assert that Plaintiffs seek to prohibit them from inquiring into the very same subject matters Plaintiffs' themselves are inquiring about.

## Defendants' Motion for Discovery Sanctions (DE 72)

Defendants move the Court to compel Plaintiffs' to produce Madison for the completion of her deposition and impose sanctions against Plaintiffs for improperly terminating the deposition. Defendants argue that Plaintiffs' counsel terminated Madison's deposition merely because Defendants' counsel asked questions Plaintiffs' counsel believed to be irrelevant. Defendants argue

4

that if Plaintiffs' counsel took issue with the relevance of a question, he could have noted or certified the question or contacted the magistrate, but was absolutely not authorized to terminate the deposition. According to Defendants, Plaintiffs' attempt to avoid sanctions by moving for a protective order is unavailing because the transcript clearly shows Plaintiffs' counsel terminated the deposition solely because he did not want certain questions asked. Additionally, Defendants assert that Plaintiffs' counsel made speaking objections and objections designed to coach the witness in violation of the Court's Local Rules, and the Discovery Practices Handbook appended thereto.

<u>Plaintiffs' Response to Defendants' Motion for Discovery Sanctions and<br>Reply in Support of Plaintiffs' Motion for Protective Order and Sanctions (DE 81)</u>

Plaintiffs argue that Defendants' pleadings show they are seeking to discover information regarding disciplinary actions taken in the family to prove Plaintiffs' character for violence and aggressiveness, in violation Federal Rule of Evidence 404(a). Plaintiffs also assert that Defendants inaccurately suggest that Plaintiffs' counsel terminated the deposition. To the contrary, Plaintiffs contend that he suggested adjourning the deposition to obtain a ruling or, alternatively, asked Defendants' counsel to inquire about what Madison witnessed the night of Plaintiffs' arrest, a topic both parties agreed to be a proper subject of inquiry. Rather than accept either suggestion, Defendants' counsel walked out of the deposition room. Plaintiffs argue that the interrogatory responses alluding to false arrest claims, raised by Defendants in opposing a protective order, were provided in January of this year, prior to the Court's Order ruling that the reasons for Plaintiffs' arrests are irrelevant. Plaintiffs contend that since that ruling, Plaintiffs have repeatedly stated that no false arrest claims are being made, withdrawn allegations having to do with the reasons for the arrests, and withdrawn witnesses with information on this matter. Plaintiffs also argue that

discussions by Defendants' counsel at Madison's deposition about potential punishment for not telling the truth and repeated questions about costume dye on her brother Peyton's legs were unreasonably oppressive and intimidating to a nine-year old child.

### Defendants' Reply (DE 85)

Defendants maintain that the transcript shows that their counsel was sensitive to Madison's age and made every effort to make her comfortable. Defendants argue that, given other discovery in the case, their discovery into what Madison knew about Plaintiffs' alleged injuries caused by Defendants, and the source of those injuries, is appropriate. Defendants argue that, contrary to Plaintiffs' assertions, Defendants' inquiries do not reach Plaintiffs' character. Instead, they go to Plaintiffs' actions, the sources of Plaintiffs' alleged injuries, and Plaintiffs' normal behavior and habits, all of which constitutes relevant, discoverable, and admissible evidence. Regardless, Defendants claim that character evidence of a plaintiff's propensity for violence is deemed relevant in cases like the instant case.

### DISCUSSION

The issues before the Court are (1) whether Plaintiffs have demonstrated good cause for issuance of a protective order prohibiting Defendants from asking about the four areas of inquiry identified by Plaintiffs, (2) whether conduct by either party warrants the imposition of sanctions, and (3) whether the Court should compel Plaintiffs to produce Madison for completion of her deposition.

Courts have long recognized the broad scope of discovery allowed under the Federal Rules of Civil Procedure, the provisions of which are designed to "allow the parties to develop fully and crystalize concise factual issues for trial." Burns v. Thiokol Chem. Corp., 483 F.2d 300, 304 (5th

Cir.1973)[2] (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947); Schlagenhauf v. Holder, 379 U.S. 104, 114-15 (1964)). Rule 26(b) governs the permissible parameters of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

Of course, the scope of discovery is not unbounded. A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Among other things, the Court may require one or more of the following limits on discovery : (1) forbidding the disclosure or discovery; (2) specifying terms, including time and place, for the disclosure or discovery; (3) prescribing a discovery method other than that selected by the party seeking discovery; (4) forbidding inquiry, or limiting the scope of disclosure or discovery, into certain matters; and (5) designating persons who may be present while the discovery is conducted. Id. The moving party bears the burden of demonstrating "good cause." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1313 (11th Cir. 2001). The "good cause" standard for issuing a protective order requires the Court to balance the moving party's interest in preventing the discovery sought against the other party's interest in seeking the discovery. Id. (citing Farnsworth v. Procter & Gamble, Co., 758 F.2d 1545, 1547 (11th Cir. 1985)).

Here, the Court has already ruled that "neither party shall be permitted to introduce evidence regarding [Peyton's] medical condition" (DE 64). The parties agree that this Court ruling renders

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

irrelevant, and Defendants state that they will not seek, any information regarding Peyton's medical condition and treatment. Consequently, the Court grants Plaintiffs' Motion for Protective Order insofar as it seeks to prohibit Defendants from inquiring into Peyton's medical condition and treatment.

As to the remaining three areas of inquiry identified by Plaintiffs, the Court finds that Plaintiffs have failed to demonstrate good cause for prohibiting discovery into such areas by Defendants. Plaintiffs argue discovery into these three areas of inquiry is impermissible under the Court's prior Order (DE 64). In that Order, the Court addressed whether information (documents and "things") regarding Peyton's psychological condition was discoverable. After ruling that the information was privileged and thus, not discoverable, the Court also ruled that neither party shall be permitted to introduce evidence regarding Peyton's medical condition. The Court stated further:

> "Moreover, this Court holds that the patient's mental status is irrelevant to this litigation. Fed. R. Evid. 401. The issue in this case is whether defendants used excessive force when arresting plaintiffs. The reason for plaintiffs' arrest is not relevant. The question to be determined is whether the defendants' conduct was so severe as to violate plaintiffs' rights."

The Court reached this holding in the context of denying a discovery motion seeking to compel Peyton's privileged medical records. Plaintiffs' reliance on this holding as broadly prohibiting any and all discovery about the reason and circumstances leading up to Plaintiffs' arrest is misplaced. To the contrary, the Court agrees with Defendants that information about the reasons and circumstances leading to Plaintiffs' arrests is reasonably calculated to lead to the discovery of admissible information bearing on Plaintiffs' reactions to being arrested by Defendants, as well as information regarding the reasonableness of Defendants' alleged use of force the night of the arrests. Plaintiffs argue that because they are not pursuing false arrest claims, such information is not

discoverable. The Court disagrees. Regardless of whether Plaintiffs will ultimately pursue false arrest claims, information about the reasons and circumstances leading up to Plaintiffs' arrests appears reasonably calculated to lead to the discovery of admissible evidence as discussed above and is, thus, within the permissible bounds of discovery.

Similarly, information regarding Plaintiffs' methodology and extent of punishment regarding Plaintiff Tabitha Harrison's children and the methodology used to secure Peyton meet the broad standard of relevance contemplated by Rule 26(b). The Second Amended Complaint (DE 90), the operative pleading in this case, alleges that Plaintiffs sustained physical injuries, including neck and head injuries, resulting from Defendants' use of excessive force against them. Plaintiffs also allege that they behaved lawfully and peacefully at all times they had contact with Defendants, and never displayed any threat to the safety of others or Defendants.

Discovery into the methodology used by Plaintiffs to secure Peyton appears reasonably calculated to lead to discovery of information regarding potential sources of Plaintiffs' alleged physical injuries. Information regarding Plaintiffs' methodology and extent of punishment regarding Plaintiff Tabitha Harrison's children bears on, or reasonably could lead to other matters bearing on, Plaintiffs' allegations of peacefulness the night of their arrests. Plaintiffs argue Defendants appear to impermissibly seek inadmissible character evidence. The Court need not reach this issue at this time, however, because Rule 26(b) expressly allows for discovery of information that is not admissible at trial as long as such discovery appears reasonably calculated to lead to the discovery of admissible evidence. This is not to say that any information elicited by Defendants as a result of this Order will be admissible at trial, which is a question to be determined by the trial judge as gatekeeper at or shortly before trial. This Order holds simply that the three topics of inquiry at issue

are open to investigation by Defendants during discovery, and responding to such topics is not unreasonably oppressive or burdensome to Plaintiffs.

Plaintiffs argue that questions and statements by Defendants' counsel at Madison's deposition were unnecessarily annoying and oppressive. This Court's review of Madison's partial deposition transcript shows that Defendants' counsel was sensitive to Madison's age. Defendants' counsel began the deposition by asking her general identifying information and then proceeded to have a brief discussion about the importance of telling the truth. Defendants are well within their rights to ensure Madison understands the importance of providing truthful testimony, and the Court does not find Defendants' line of questioning on truthfulness to be unreasonably oppressive or otherwise inappropriate. As to questions by Defendants' counsel about Madison's knowledge of Halloween costume dye on Peyton's legs, to which Plaintiffs specifically object, the Court finds such questioning to have been appropriate considering that the Amended Complaint (DE 34), which was the operative pleading at the time, contained an allegation that red markings on Peyton's legs were due to dye from a Halloween costume he was wearing the night before Plaintiffs' arrests.

Each party has moved for sanctions against the other based on Madison's failed deposition. Plaintiffs claim Defendants wrongfully refused to continue the deposition and ask Madison questions about what she witnessed the night of Plaintiffs' arrests. Defendants claim Plaintiffs wrongfully terminated the deposition. The Court's review of the transcript reveals that Plaintiffs improperly made several speaking objections and made lengthy re-characterizations of Madison's testimony, which operated to curtail questioning by Defendants' counsel. To the extent Plaintiffs' counsel objected to questioning by Defendants' counsel, the appropriate response would have been to simply object in a proper and concise manner and then allow the deponent to answer subject to the

objection. At the same time, Defendants representation that Plaintiffs' ended the deposition is not entirely accurate. Near the end of the failed deposition, Plaintiffs suggested that Defendants inquire into what Madison witnessed the night of the arrest, which is clearly critical information in this excessive force case. Defendants refused this suggestion and left the room instead. In sum, based on the Court's independent review of the deposition transcript, the Court faults both parties for improper conduct ultimately leading to Madison's failed deposition, and concludes that neither party is entitled to an award of fees and costs. Nevertheless, in light of Madison's presence at the time of Plaintiffs' arrests and resulting knowledge of discoverable information that is clearly important in this excessive force case, the Court orders Plaintiffs to produce Madison Tanner for a renewed deposition on or before the discovery cut-off in this case.

For the foregoing reasons and after due consideration, it is hereby

ORDERED AND ADJUDGED that:

(1)  Plaintiffs' Motion for Protective Order (DE 68) is GRANTED IN PART and DENIED IN PART, as follows:

    (a)  Defendants are prohibited from inquiring, of any party or witness, about any information regarding Peyton Tanner's medical condition and treatment.

    (b)  Defendants are not prohibited from inquiring into Plaintiffs' methodology and extent of punishment regarding Plaintiff Tabitha Harrison's children, the methodology used to secure Peyton Tanner on the date of Plaintiffs' arrests, and the reasons and circumstances leading to Plaintiffs' arrests.

(2)  Plaintiffs' Motion for Sanctions (DE 69) is DENIED.

(3)  Defendants' Motion for Discovery Sanctions (DE 72) is GRANTED IN PART and

DENIED IN PART, as follows:

(a) Plaintiffs shall produce Madison Tanner for a renewed deposition. Such deposition shall resume at a location, date, and time to be agreed upon by the parties, but no later than July 31, 2009. Upon reaching agreement as to the location, date, and time of Madison's renewed deposition, the parties shall file a joint notice of the same with the Court.

(b) At Madison's renewed deposition, the parties' counsel shall comply with all Federal and Local Rules governing civil procedure and cooperate in a good faith effort to complete Madison's deposition. To the extent either party objects to any part of the deposition, that party shall concisely note their objection on the record and the deposition shall proceed in a timely and orderly fashion subject to any such objection.

(4) No party shall be awarded any costs or fees associated with the instant motions.

DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 23 day of July, 2009.

ANN E. VITUNAC
United States Magistrate Judge

Copies to:
Honorable Kenneth L. Ryskamp
All counsel of record